IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Trena Nelson-Rivers, ) | Civil Action No.: 2:25-2609-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Berkeley Electric Cooperative Board, ) | **<u>ORDER</u>** |
| Berkeley Propane Board, Berkeley ) | |
| Electric Cooperative, Inc., Michael ) | |
| Fuller-CEO of Berkeley Electric ) | |
| Cooperative, Inc., John "Jack" B. ) | |
| Williams-General Counsel of ) | |
| Berkeley Electric Cooperative, Inc., ) | |
| H. Wayne Dewitt-Board Chairman, ) | |
| and Louise Meade, Vice President of ) | |
| Human Resources, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Trena Nelson-Rivers ("Plaintiff") filed this action against Defendants on March 26, 2025, asserting causes of action for: (1) race discrimination; (2) breach of contract; (3) breach of contract with fraudulent intent; (4) civil conspiracy; and (5) breach of fiduciary duty. (ECF No. 1.) On April 28, 2025, Defendants filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 5.) In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B) (D.S.C.), the matter was referred to a United States Magistrate Judge for preliminary review.

On December 8, 2025, Magistrate Judge William S. Brown entered a Report and Recommendation ("Report") analyzing the issues and recommending that the Court grant Defendants' motion to dismiss. (ECF No. 11.) Plaintiff filed objections to the Magistrate Judge's Report; Defendants filed a response to Plaintiff's objections; and the matter is ripe

for review.  For the reasons set forth herein, the Court overrules Plaintiff's objections, adopts the Magistrate Judge's Report, and grants Defendants' motion to dismiss.

## STANDARDS OF REVIEW

### I.    Rule 12(b)(6) of the Federal Rules of Civil Procedure

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading standard set forth in Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.*  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement."  *Id.* (quoting *Twombly*, 550 U.S. at 557).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of a plaintiff's complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged.  *Id.*  When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## II. The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

### DISCUSSION

The Magistrate Judge's Report summarizes the factual allegations as set forth in Plaintiff's complaint, and Plaintiff does not specifically object to this portion of the Magistrate Judge's Report. (*See* ECF No. 11 at 3-4; *see also* ECF No. 1 ¶¶ 1-17.)) After review, the Court finds accurate the Magistrate Judge's recitation of the factual allegations, and the Court adopts this portion of the Report and repeats only the allegations necessary to address Plaintiff's objections below.

In her objections, Plaintiff asserts that the Magistrate Judge erred in his legal conclusions and by recommending that the Court dismiss Plaintiff's claims prematurely. (ECF No. 12 at 4.) Specifically, Plaintiff asserts:

> the Magistrate erroneously draws the following conclusions: that Plaintiff "makes conclusory assertions that she was discriminated against and fired because of her Race," distinctively that Plaintiff did not plead facts to support the conclusion that Race was the cause of her firing or that the adverse employment action was motivated by her Race. The Court further states that "there was no alleged racially motivated statement made by a decision maker or specific conduct to suggest racial animus, including the micromanagement of Plaintiff." Furthermore, the Court asserts that "the reasoning for Plaintiff's termination was neutral grounds for the adverse action asserted." As to

3

> Plaintiff's Breach of Contract and Breach of Contract with Fraudulent Intent claim, the Court asserts that Plaintiff's allegations "fail to specify the actual provisions of the Employee Handbook at issue and fail to specify how such provisions create mandatory obligations." As for Plaintiff's Civil Conspiracy claim, the Court asserts that "an at-will employee cannot maintain an action for civil conspiracy against his employer where the employee alleges that the employer conspired with others to terminate his or her employment." Lastly, as to Plaintiff's Breach of Fiduciary Duty claim, the Court asserts that Plaintiff "did not cite any case and that the Court has found no authority to allow a party to vicariously assert a breach of fiduciary duty owed to another, and that a duty owed to the company is not sufficient to support a personal claim by Plaintiff."[1]

(*Id.*) Plaintiff further asserts that the Magistrate Judge erred by treating Defendant's motion as a Rule 56 motion for summary judgment rather than a Rule 12(b)(6) motion to dismiss, and Plaintiff contends that this matter should proceed to discovery.

After *de novo* review, the Court finds Plaintiff's objections entirely unavailing. First, contrary to Plaintiff's assertion that her complaint includes sufficient facts to state a plausible claim for race discrimination in violation of 42 U.S.C. § 1981,[2] the Court fully agrees with the Magistrate Judge that Plaintiff's complaint makes only conclusory allegations that she was discriminated against and fired because of her race. In her objections, Plaintiff points to paragraph 10 of her complaint, which states in full:

---

[1] The Court notes that, in a later portion of her objections, Plaintiff concedes that there is "no duty owed to the CEO and Plaintiff for Breach of a Fiduciary Duty." (ECF No. 12 at 17.)

[2] As the Magistrate Judge explained, § 1981 provides in part that all "persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The Supreme Court has interpreted it "to forbid all racial discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (internal quotation marks omitted). This prohibition includes "discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).
"A plaintiff may ultimately prove a race-discrimination claim under § 1981 through direct or circumstantial evidence showing that an adverse employment action was caused by intentional discrimination aimed at the plaintiff's race, or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [ ] (1973)." *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (citing *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (internal quotations omitted).

> Plaintiff's comparison of her work life between May 1, 2017, and August 1, 2020, before the arrival of Defendant Fuller as stated above was fully supported by the Board and the utility authority. Plaintiff's direct timeline of adverse actions which were racially motivated and intensified on February 1, 2023, when Plaintiff, in a meeting with Defendant Michael Fuller, began to question Fuller's micromanagement of the Propane Division, which he had no responsibility for the management of the Propane Division. On February 1, Defendant Fuller stated and Plaintiff quotes "You are acting pissy and are beginning to piss him off." Plaintiff immediately ended the conversation to avoid any more harassing statements from him, but following that encounter, Plaintiff met with the Human Resources Department of the entire authority to express her displeasure, and the racially overt actions meted towards Plaintiff by Defendant Fuller. Plaintiff also indicated that she believed that Defendant Fuller orchestrated a conspiracy against her to effectively start a process of removing Plaintiff from her position, which was a conspired effort between Defendants Michael Fuller, John "Jack B" Williams, H. Wayne Dewitt, and Louise Meade. Beginning in March of 2024, on information and belief, the above co-conspirators began a power move to sell the Berkeley Propane Division in a targeted retaliatory effort against Plaintiff for her having raised racial concerns regarding her interactions with Defendant Fuller and Langdon to the Human Resources Department as stated above.

(ECF No. 1 ¶ 10.)

After review, however, although Plaintiff refers to a "direct timeline of adverse actions which were racially motivated," she pleads no facts to support this conclusory allegation. Further, although she states that she was micromanaged and that one of the Defendants accused her of being "pissy," these allegations are wholly insufficient to show that Defendants' actions were "racially overt" or in any way motivated by her race. Likewise, although Plaintiff complains of a "racially toxic" environment and states that Defendants retaliated against her "for her having raised racial concerns" to Human Resources, nowhere does Plaintiff plead any facts to suggest any racial animus on the part of Defendants. (ECF No. 1 ¶¶ 8, 10; *see also id.* ¶ 18 (referencing "racial harassment" and "discriminatory termination" without *any* allegations of racially motivated statements or actions on the part of Defendants). In all, Plaintiff's claim appears to rest on the fact that

5

she was the only black person serving as a CEO during the relevant time period, but this fact alone is insufficient to support an inference of racial discrimination. Ultimately, although Plaintiff's complaint includes numerous buzzwords like "racially hostile treatment" and "Race-based micromanagement and harassment" (ECF No. 1 ¶¶ 22-23), these naked and conclusory assertions are unsupported by factual allegations to plausibly plead that Defendants intended to discriminate against Plaintiff *on the basis of her race*. Thus, the Court agrees with the Magistrate Judge that Plaintiff's first cause of action is subject to dismissal.

Next, as to Plaintiff's second and third causes of action for breach of contract and breach of contract with fraudulent intent, respectively, Plaintiff relies on the employee handbook and its mandatory policies and procedures and alleges that Berkeley Electric Cooperative, Inc. breached its employment contract with her by failing to protect her from the race discrimination by the other Defendants. (ECF No. 1 ¶¶ 35, 37, 39.)

In the Report, the Magistrate Judge explained that employment is presumed to be at-will in South Carolina, and "to survive a motion to dismiss on a claim for breach of contract of employment, a plaintiff must plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship." *Brailsford v. Fresenius Med. Ctr. CNA Kidney Ctrs. LLC*, No. 2:15-cv-4012-DCN, 2017 WL 1214337, *5 (D.S.C. April 3, 2017) (citation omitted). The Magistrate Judge further explained that an employment handbook can create a contract beyond the at-will relationship when: "'(1) the handbook provision(s) and procedure(s) in question apply to the employee, (2) the handbook sets out procedures binding on the employer, and (3) the handbook does not contain a conspicuous and appropriate disclaimer.'" *Id.* (quoting *Grant v. Mount Vernon*

6

*Mills, Inc.*, 370 S.C. 138, 634 S.E.2d 15, 20 (S.C. Ct. App. 2006)). However, as the Magistrate Judge also noted, "[c]ourts in this District have held that typical anti-discrimination and anti-retaliation polices found in most employee handbooks are insufficient to form a contract of employment necessary to overcome the at-will presumption." (ECF No. 11 at 7-8 (citing cases).)

Ultimately, the Magistrate Judge concluded that the allegations in Plaintiff's complaint are insufficient to defeat Defendant's motion because Plaintiff does not specify the actual provisions of the employee handbook at issue or how such provisions create mandatory obligations. (*Id.* at 8.) In her objections, Plaintiff asserts that she is not required "to present or plead specific language from Defendants' policies to sufficiently allege that an employment contract existed between Plaintiff and Defendant." (ECF No. 12 at 10.) Instead, Plaintiff asserts that she has sufficiently alleged a claim and she points to the cases of *Hall v. YMCA Child Dev. Acad., LLC*, No. 1:17-337-JMC, 2017 WL 3158776 (D.S.C. July 25, 2017), and *Hayes v. Clarios LLC*, No. 4:22-2252-RBH, 2022 WL 14763217 (D.S.C. Oct. 5, 2022), in support of her argument.

After review, the Court is not persuaded by Plaintiff's objection. Here, Plaintiff alleges in her complaint:

> 34. Plaintiff and Defendant entered into a binding and legal contract for employment with Berkeley Electric Cooperative as an Accounting Clerk for Berkeley Electric Cooperative beginning April 19, 1999. The Plaintiff was later promoted to Vice President of Berkeley Cooperative Enterprises Propane Division by CEO Cartwright on May 1, 2017. Plaintiff accepted the offer of employment and agreed to fulfill the duties of her position in exchange for valuable consideration, her salary, and Defendant's guarantee that she would be protected from racial discrimination.
>
> 35. Defendant maintained an employee handbook and its mandatory

>       policies and procedures to include Plaintiff's job description, which sets out conditions that Plaintiff performed in an exemplary manner.
>
>       . . .
>
> 37.   At all times during her employment, Plaintiff relied on the promises contained in Defendant's Handbook, policies, procedures, and governing documents.

(ECF No. 1 ¶ 34-35, 37.) The Court finds these allegations insufficient to overcome Defendant's motion to dismiss.

Although mandatory language in an employee handbook is one way a contract altering the at-will employment relationship may be entered, as the Magistrate Judge correctly noted, courts in the District of South Carolina have held that typical anti-discrimination policies found in most handbooks are insufficient to form a contract of employment necessary to overcome the at-will presumption. *Frasier v. Verizon Wireless*, No. 8:08-CV-356-HMH, 2008 WL 724037, at *2 (D.S.C. Mar. 17, 2008) (unpublished) (dismissing claim that the defendant violated the terms of its code of conduct and finding that an employer's promises that "everyone should feel comfortable to speak his or her mind" and that the employer "prohibits retaliation against employees who, in good faith, submit or participate in the investigation of any complaints . . . do not create an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated."); *King v. Marriott Int'l, Inc.*, 520 F. Supp. 2d 748, 756 (D.S.C. 2007) (dismissing the plaintiff's claim for breach of contract and finding that the employer's policy statements against discrimination and recrimination did not create a contract or otherwise alter the plaintiff's at-will status); *Hessenthaler v. Tri–Cnty. Sister Help, Inc.*, 365 S.C. 101, 616 S.E.2d 694, 698 (S.C. 2005) (dismissing claim for breach of anti-retaliation

policy and finding that "[u]nlike a mandatory, progressive discipline procedure, a general policy statement of nondiscrimination does not create an expectation that employment is guaranteed for any specific duration or that a particular process must be followed before an employee may be fired."). Furthermore, unlike in *Hall*, where the plaintiff alleged that the at-will employment status was altered because the mandatory termination policies and procedures in the defendant's employee handbook limited the defendant's right to terminate the plaintiff, Plaintiff in this case does not include *any* similar factual allegations regarding terms in the employee handbook that allegedly altered the at-will status of her employment.[3]

Ultimately, although Plaintiff is correct that she does not need to attach a copy of the employment handbook to her complaint or cite to specific provisions, she still must do more than present general and conclusory allegations that she "entered into a binding and legal contract for employment" with a "guarantee that she would be protected from racial discrimination" and that "Defendant maintained an employment handbook and its mandatory policies and procedures." (ECF No. 1 ¶¶ 34-35.) After careful review, the Court finds the allegations of Plaintiff's complaint insufficient to plead the existence of an employment contract that altered Plaintiff's at-will status. Accordingly, the Court agrees with the Magistrate Judge that Plaintiff's second and third causes of action are subject to dismissal.

Next, as to Plaintiff's fourth cause of action for civil conspiracy, the Magistrate Judge

---

[3] Nor does the Court find that *Hayes* supports a different conclusion. In *Hayes*, the plaintiff complained of the defendant's handling of her performance improvement plan and the defendant's anti-discrimination and anti-retaliation policies, and the court noted that it was a close call when it denied the defendant's motion to dismiss. 2022 WL 14763217, *5. The court in *Hayes* noted that the plaintiff "provided some information about the substance of the policies." *Id.* *4. Importantly, this Court cannot state the same.

9

explained that an at-will employee generally cannot maintain an action for civil conspiracy against his employer where the employee alleges that the employer conspired with others to terminate his or her employment. (ECF No. 11 at 9 (citing cases).) Because Plaintiff alleges in her complaint that the purpose of the alleged conspiracy was "to ensure the termination of Plaintiff's employment . . . ," the Magistrate Judge found Plaintiff's claim subject to dismissal.

In her objections, Plaintiff asserts that she has sufficiently pleaded independent acts beyond the at-will termination itself to demonstrate a civil conspiracy. (ECF No. 12 at 14.) However, Plaintiff then references her assertion that Defendants Fuller, Meade, and Williams conspired to effectuate her termination, and Plaintiff asserts that the Magistrate Judge's recommendation that this claim be dismissed is premature because the parties have not yet engaged in discovery.

Here again, the Court finds Plaintiff's objection unavailing. As noted above, Plaintiff's complaint does not plausibly allege that Plaintiff's at-will status was somehow altered, and under South Carolina law, an at-will employee cannot maintain a claim for civil conspiracy against his employer based on his termination. *Ross v. Life Ins. Co. of Virginia*, 273 S.C. 764, 765-66, 259 S.E.2d 814, 815 (1979); *see also Angus v. Burroughs & Chapin Co.*, 368 S.C. 167, 170, 628 S.E.2d 261, 262 (2006); *Faile v. Lancaster County, S.C.*, No. 0:11-cv- 2206-CMC, 2013 WL 786447, at *4 (D.S.C. March 1, 2013) (unpublished). Furthermore, the plain language of Plaintiff's complaint alleges only that Defendants' conspired against her to ensure her termination, contrary to her assertion that the complaint pleads independent acts beyond this. As such, the Court agrees with the Magistrate Judge that Plaintiff's fourth cause of action for civil conspiracy is subject to dismissal.

Finally, as to Plaintiff's fifth cause of action for breach of fiduciary duty, as noted in footnote 1, Plaintiff agrees with the Magistrate Judge that there is no fiduciary duty owed to her by Defendants. (ECF No. 12 at 17.) Accordingly, for the reasons set forth by the Magistrate Judge, the Court finds Plaintiff's fifth cause of action for breach of fiduciary duty subject to dismissal.

## **CONCLUSION**

Based on the foregoing, the Court overrules Plaintiff's objections (ECF No. 12); the Court adopts and incorporates the Magistrate Judge's Report (ECF No. 11); and the Court grants Defendants' motion to dismiss (ECF No. 5) and dismisses this case without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

February 20, 2026
Charleston, South Carolina